IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

COPY

ENERGY CONCEPTS, LLC,    )
      Plaintiff,    )
          )
VS.    )     DOCKET NO. _14-1646-II_
          )
DIRECT CAPITAL CORPORATION,    )
      Defendant.    )

## COMPLAINT

COMES NOW the Plaintiff, Energy Concepts, LLC, by and through its undersigned counsel, and files its Complaint against the Defendant, Direct Capital Corporation, and for its causes of action would state and show unto this Court as follows:

### I. JURISDICTION AND VENUE

1. That this action is for a breach of contract.

2. That this Court has jurisdiction over the subject matter and the dispute.

3. That venue is proper in this juridical district.

### II. PARTIES

4. That Energy Concepts, LLC, (hereinafter "Energy Concepts") is a limited liability corporation duly organized and existing under the laws of the State of Tennessee.

5. That, according to business information maintained by the Secretary of State of New Hampshire, Direct Capital Corporation (hereinafter "Direct Capital") is a foreign corporation with its principal place of business located at 155 Commerce Way, Portsmouth, New Hampshire 03801.

Page -1-

6. That, according to business information maintained by the Secretary of State of New Hampshire, the registered agent for service of Direct Capital is Steven Cohen, Esq., whose office is located at 111 Amherst Street, Manchester, New Hampshire 03101.

7. That, upon information and belief, Direct Capital engages in continuous and systematic activities within the State of Tennessee.

8. That, upon information and belief, Direct Capital conducts business, and at all relevant times, conducted business and performed acts in Nashville, Davidson County, Tennessee and has sufficient contacts and business within Nashville, Davidson County, Tennessee so as to be subject to the in *personam* jurisdiction of this Court.

## III. FACTUAL ALLEGATIONS

9. That on, *or about*, October 9, 2014, Energy Concepts and Direct Capital negotiated and entered into an Agreement (hereinafter "Agreement") in which Energy Concepts agreed to deliver certain goods and equipment to a Direct Capital customer. A true and exact copy of the October 9, 2014 Agreement is attached hereto and incorporated herein by reference as Exhibit "A."

10. That the Agreement indicates that the total cost of the contract was One Hundred Nineteen Thousand Dollars and Eight Hundred Fifty Dollars ($119,850.00).

11. That the Agreement provides an initial deposit of Fifty Percent (50%) at contract and that the remaining balance is due at delivery.

12. That the Agreement does not contain, and/or indicate, either a forum selection clause or a clause indicating that the agreement was reached in a particular forum.

13. That, in accordance with the terms of the Agreement, Direct Capital delivered the sum of Fifty Nine Thousand Nine Hundred Twenty Five Dollars ($59,925.00) to Energy Concepts on, or about, October 15, 2014,

14. That, in accordance with the terms of the Agreement, Energy Concepts delivered goods on, or about, October 28, 2014.

15. That on, or about, November 7, 2014 Energy Concepts sent Direct Capital a written demand for payment. A true and exact copy of the November 7, 2014 demand is attached hereto and incorporated herein by reference as Exhibit "B."

16. That on, or about, November 13, 2014 Energy Concepts again made demand for payment.

17. That Direct Capital has refused Energy Concept's demand for payment and Energy Concepts is still owed the sum of Fifty Nine Thousand Nine Hundred Twenty Five Dollars ($59,925.00).

18. That Energy Concepts would show that it delivered all goods as contracted for and that it has been unable to collect the total amount due.

## IV. CLAIM FOR RELIEF: BREACH OF CONTRACT

19. That Energy Concepts hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs One (10) through Eighteen (18) herein.

20. That Direct Capital has refused to pay Energy Concepts pursuant to the terms of the Agreement and, thus, Direct Capital has breached the Agreement.

21. That Energy Concepts has suffered damages as a result of Direct Capital's breach of the Agreement.

Page -3-

## VII. RELIEF SOUGHT

**WHEREFORE, PREMISES CONSIDERED**, Energy Concepts prays as follows:

1. That process issue and that Direct Capital be required to answer this Complaint in the time allowed by law;

2. That a judgment be entered against Direct Capital in the principal amount of Fifty Nine Thousand Nine Hundred Twenty Five Dollars ($59,925.00), plus pre and post judgment interest;

3. That Energy Concepts be awarded all reasonable costs and expenses incurred in pursuing this litigation;

4. That Energy Concepts be awarded all of its reasonable attorney fees, *including paralegal expenses, expert fees, costs of discovery, and other expenses*, in connection with pursuing this litigation;

5. That the Court award Energy Concepts such other and further relief as the Court considers just, equitable, and proper.

Respectfully submitted,

HARRINGTON LAW OFFICE

PENNY HARRINGTON          #09983

JONATHAN S. CARLTON          #29768
Attorneys for the Plaintiff, Energy Concepts, LLC
*Historic Germantown*
1215 Seventh Avenue North
Nashville, Tennessee 37208-2605
Telephone:     (615) 320-9977
Facsimile:     (615) 320-9929

Page -4-

## VERIFICATION OATH

STATE OF TENNESSEE )
                             )
COUNTY OF DAVIDSON )

     I, Larry Sneed, in the capacity of Chief Executive Officer of Energy Concepts, LLC, after first being duly sworn, make oath that the facts stated in the foregoing Complaint are true and correct to the best of my knowledge and belief; and that the Complaint is not made out of levity, but in truth and sincerity for the causes mentioned therein.

                                          **LARRY SNEED**

SWORN to and subscribed before me this the 24th day of November, 2014.

                                NOTARY PUBLIC

JONATHAN S. CARLTON
STATE OF TENNESSEE
NOTARY PUBLIC
DAVIDSON COUNTY

                    My Commission Expires: May 08, 2018

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

ENERGY CONCEPTS, LLC,         )
      Plaintiff,               )
                       )

VS.                     )    DOCKET NO._____
                       )

DIRECT CAPITAL CORPORATION,  )
      Defendant.           )

---

## EXHIBIT "A"

---



ENERGY CONCEPTS LLC
*Power Conditioning Solutions*

P.O. Box 17708
Nashville, TN 37217
(615) 506-8996
www.energyconceptsusa.com
EIN # 56-2453737

**INVOICE**

**DATE: Oct 9, 2014**

Number   14-126

Bill to: Direct Capital Corp.
155 Commerce Way
Portsmouth, NH  03801

SHIP TO: Julie Williams Insurance Agency, PLLC
423 Main St., Suite 106
Gruver, TX   79040

| QTY. | DESCRIPTION | PRICE | COST |
|---|---|---|---|
| 8 | Computer Renaissance Custom Manufactured Computer Work Station/Server; Intel i3/ 8GB RAM/500GB hard drive and dvd burner; wireless-N 300Mbps Internal PCI adaptor; enterprise cooling package; Logisys 480 watt power supply; ASUS H8 1M-A LGA1150/Intel H81/DDR3/SATA3&USB3.0/A&GbE/MicroATX Motherboard; Seagate/WD 500GB 7200 RPM 16MB CACHE SATA 6.0GB/s Microsoft Windows 7, 64-bit/w business package upgrade | $5,670 | $45,360.00 |
| 8 | 20" LG Black HDMI 14ms GTG Widescreen LED-LCD Monitor | 210 | $1,680.00 |
| 8 | Micro-Wired Combination Keyboard/Mouse | $60 | $480.00 |
| 8 | PSP/CyberPower Integrated Uninterruptible Power Supply, CP1000PF; 1000Va/600W; line interactive, multifunctional LCD Panel; 8AC strips, 4600j rated, with shutdown and safety thermal fuse. | 5,325.00 | $42,600.00 |
| 1 | PSP Custom Engineered Centralized Electrical Surge Protection System; Model No. TB160, 160K surge amps (4); Model No. AM2080-V-07, 300K surge amps(1);  Model No. AC2100, 200K surge amps (2). | | $29,730.00 |
| | Shipping/handling/installation. | | |

| TOTAL | |
|---|---|
| | $119,850.00 |

TERMS:   50% at contract; Balance upon delivery.

Thank you for your business!

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

ENERGY CONCEPTS, LLC,
    Plaintiff,

VS.                DOCKET NO._____

DIRECT CAPITAL CORPORATION,
    Defendant.

---

## EXHIBIT "B"

---



Energy Concepts LLC

P.O. Box 17708 Nashville, TN 37217  Phone: (615) 506-8996  www.energyconceptsusa.com  energyconceptsn@gmail.com

November 7, 2014

Ms. Dawn Druyer Gillette
Senior Vice-President,
Chief Financial Officer
Direct Capital Corp.
155 Commerce Way
Portsmouth, NH 03801

Dear Ms. Gillette,

My company is a vendor that markets custom computers /surge systems, primarily to small to mid size business. I have been in business for over 10 years. On occasions, I offer my customers equipment leasing as an option. Some 4 or 5 months ago, I submitted my first application to Direct for Calderon Venture Management. That was a very strong application financially, and, has worked well for both Direct and me, as he is a repeat customer.

On or about October 9, 2014, I submitted another application on a Julie Williams Insurance Agency, PLLC, along with a complete financial package. Again, this was a very strong, financially sound customer that is undergoing an upgrade and expansion. I have attached a copy of the invoice. I received a quick approval of this, no doubt because of the strength of the owner. In fact, your sales rep, Roger Montplaisir, seemed very anxiuos about getting this completed, and Direct prefunded me $59,925 on October 15, per the invoice. He called or emailed me several times regarding delivery of the equipment. Each time I explained that the equipment is made to spec, and not "pulled off a shelf". I rushed it as fast as I could and provided serial numbers and tracking information upon shipment. All of the equipment, 12 large boxes of about 400lbs. was delivered on Monday, Oct. 27 and Tuesday, Oct. 28. It is my understanding that Direct had three site inspections conducted on this customer.

After the third inspection was concluded, Ms. Williams confirmed that she had received the equipment she ordered and was pleased and satisfied. I inquired about the final payment and received an email from Mr. Montplaisir that upon receipt of the final site inspection and a



Metropolitan Nashville
Airport Authority







verbal with Ms. Williams, it would be sent. I waited.. Later that day, I receive a call from Larry Rinard of Calderon Venture, my first customer with Direct, that he had received a call from a Mr. Ryan Hodson, from the collection department at Direct, asking him questions about the equipment that he received some 4 months ago. Since Calderon had never been late on a payment, he considered this nothing more than harassment. He said the conversation was condescending and very unprofessional and he actually did not know the purpose of the conversation, other than to slander me and to inform Mr. Rinard that the equipment he was leasing was overpriced. Mr. Rinard informed Mr. Hodson that he was happy with it, he had no problems with it, but if he did he would take it up with the vendor, as per the lease. I further learned that Mr. Hodson had called Ms. Williams, identifying himself as being with the legal department. Ms. Williams was very stressed and upset when she called me. According to Ms. Williams, the remarks made by Mr. Hodson bordered on, if not crossed, the line of slander against me and my company. I called Mr. Hodson, identified myself, and asked what the problem was. He asked some vague questions and I still did not totally understand his point. It was a short, unpleasant conversation. The next day I received another call from Mr. Hodson, with the same theme, that the equipment was not worth what I charged. He made some unfounded accusations regarding me and my customers, and, I basically told him that we had a valid agreement and he should honor it. Direct Capital had every opportunity to scrutinize this and do any due diligence they wanted prior to agreeing to it, and funding it. The customer has the equipment she ordered, she is satisfied; I delivered as promised. Two of the three parties fulfilled their obligations. Direct Capital needs to do the same. The value was established when everyone agreed to the terms and the contract (my invoice). I have since learned that Mr. Hodson again has called both of these customers, with the same harassing nature. I still have not been paid by Direct Capital.

I apologize for this lengthy letter. However, rather than turn this over to my attorney, which would only add to the time , expense and complication, I wanted to submit this demand letter to you in hopes that this matter could be resolved amicably and quickly. Therefore, I demand:

1. Direct Capital remit to my company $59,925.00 for payment in full under invoice no. 14-126, no later than the close of business, central time, Wednesday, November 12.

2. Direct Capital cease and desist in the harassment of my (and your) customers, unless it pertains to the obligations under the lease agreement.

3. Direct Capital and/or its employees cease and desist in the slander of me or my company.

Ms. Gillette, this has been a very stressful situation for both me and my customers. I spend a lot of time building a relationship with some of my customers, especially the ones that will come back again at a later date. In a matter of a few days, your Mr. Hodson has made every effort to destroy that. In the last few days, I have spoken with a number of people in this business, both on the leasing side and the vendor side. They were all somewhat surprised, but also realize that this is a very vicious business.

page three

I understand that we will never do business again, but I hope this can be resolved so I can move on. If you have any questions, please let me know. I look forward to hearing from you.

Sincerely,

Larry Sneed
ENERGY CONCEPTS LLC